**MORRIS & CUMINGS DREDGING CO., Inc., v. UNITED STATES et al.**

**UNITED STATES v. THE WATUPPA**

**THE WILLIAM H. PRESCOTT.**

**THE WATUPPA.**

Nos. 187, 188, Docket 20488, 20489.

Circuit Court of Appeals, Second Circuit.

May 28, 1947.

J. Vincent Keogh, U. S. Atty., of New York City, (Vincent A. Catoggio, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for appellee McCarren Towing Line.

Hagen & Eidenbach, of New York City (Nelson J. Johnson, of New York City, of counsel), for appellee Morris & Cumings Dredging Co., Inc.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

In these consolidation suits in admiralty, arising out of a collision in the vicinity of the Statute of Liberty Anchorage in New York Harbor, the United States, owner of the S. S. William H. Prescott, appeals from two decrees of the District Court for the Eastern District of New York, namely, the interlocutory decree in the first of the above captioned suits and the final decree in the second suit, which held the United States solely at fault for the damages sustained by the dump scows M-54 and ER-20 in tow of the tug Watuppa and for damage

to the S. S. William H. Prescott. These decrees exonerated the tug Watuppa and her owners, McCarren Towing Line, Inc., dismissed the libel of the United States against the tug and her owners seeking the Prescott's damages, and awarded to Morris & Cumings Dredging Co., Inc., owner of the scows, its damages against the United States. The cases were tried together before Judge Inch, who filed a written opinion directing that proposed findings of fact and conclusions of law be submitted.

On September 28, 1943, shortly before 2 P. M., the government-owned Liberty ship William H. Prescott, headed upstream, was proposing to anchor in the anchorage off the Statue of Liberty. At the same time the McCarren Towing Line tug Watuppa, with three empty mud scows in tow on a hawser, was headed out of the North River into Upper New York Bay. The weather was clear, visibility good and an ebb tide was running out of both the North and the East Rivers. The last two scows, the M-54 and the ER-20—in tow of the Watuppa—came into collision with the bow of the S. S. William H. Prescott. The starboard side of the ER-20, the second scow, came into contact with the steamer's bow. The M-54, the third scow, wrapped around the steamer's port side, parting her lines.

The steamer contended that the tow was canted across the stream and was carried down by the ebb tide on the ship's bow. The District Court rejected this proof and found that the vessels were in a head and head position; that the ship, by letting go her starboard anchor and backing engines, swung her bow into collision with the barges. The tow was 640 feet long from stem to stern, and the bow of the last scow was about 440 feet from the stern of the tug.

It is argued on behalf of the steamer that the District Judge misinterpreted the testimony and the customary attempt is made to have this court review its weight and the inferences to be drawn from it as though we were the original trial tribunal and little or nothing had happened beyond the giving of the testimony of the various witnesses. The judge—after receiving a mass of evidence, in many instances conflicting—found that the Watuppa and her barges towed tandem accepted a two blast signal to pass the steamer starboard to starboard, that she proceeded to carry out the manoeuvre indicated by that signal, and that the steamer, when abreast and but 200 to 300 feet away from her, dropped her starboard anchor, reversed her engines and thereby swung to starboard and collided with the last two barges of the tow. It may seem that a sheer of 200 or 300 feet in such a limited time as elapsed between the passage of the tug at that distance and the collision with the last two barges in the tow was unlikely, but the distance may have been somewhat overestimated and in any event we cannot say that dropping the starboard anchor and reversing could not cause a sufficient sheer on the part of the steamer to account for the collision. The manoeuvre would evidently have the effect of turning the bow of the steamer toward the Watuppa barges and was found by the court below to be a negligent act of seamanship in a situation where the courses of the steamer and the tug and tow lay no farther apart. It is argued on behalf of the steamer that when the Watuppa first saw her, the tug had signalled for a port to port passage and had put her rudder right before the signal was assented to. This may have been a fault, but the vessels were then about 2000 feet apart, were proceeding slowly, and the tugmaster only ported his wheel slightly and for a very short time before accepting the steamer's two blast signal and undertaking the starboard to starboard passage under a left wheel. The trial judge found that the slight change in heading which occurred when the master of the tug put his rudder to the right did not contribute to the collision. The disputes were all as to facts or to inferences to be drawn from facts testified to. They were difficult questions of more or less and, in our opinion, were matters properly within the province of the trial judge. He held that the tug kept her tow straight behind her at a safe distance from the course of the steamer and that the latter carelessly dropped her starboard anchor and reversed her engines when so near the barges that she swung her bow into them.

Upon the record presented we cannot say that the findings of the District Court were clearly erroneous and the decrees are accordingly affirmed.